# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| BRITTANY NICOLE SMITH, <br><br> Plaintiff, <br><br> v. <br><br> MILLIMAN, INC. d/b/a INTELLISCRIPT, <br><br> Defendants. | Civil Action No.: 3:25-cv-84 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Brittany Nicole Smith f/k/a Brittany Nicole Jackson ("Plaintiff" or "Ms. Smith") brings this action on an individual basis, against Milliman, Inc. d/b/a Intelliscript ("Defendant" or "Milliman") for actual, statutory, and punitive damages and costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et. seq.*, arising out of Defendant's mixing Plaintiff's consumer report with another consumer and associating Plaintiff with a voluminous amount of medical records that do not belong to her.

## INTRODUCTION

1.      The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

1

2.	However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the Defendant acknowledges this potential for misuse and resulting damage every time it sells its respective credit monitoring services to a consumer.

3.	The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.	These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for insurance, retail credit, housing, employment, or a car or mortgage loan.

5.	Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6.	"Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

7.	Congress made the following findings when it enacted the FCRA in 1970:

(a)     The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

(b)     An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

(c)     Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

(d)     There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4).

8.      Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter."   15 U.S.C. § 1681(b). Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

9.      The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec.

3

36570 (1970)] (emphasis added).

10.     Since 1970, when Congress enacted the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et. seq.*, ("FCRA"), the federal law has required CRAs to have in place and to utilize reasonable procedures "to assure the maximum possible accuracy" of the personal and financial information that they compile and sell about individual consumers.

11.     The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

12.     In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

13.     The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

14.     A recurring and *known* issue within the credit reporting industry is the creation of "mixed files."

4

15.     A "mixed file" occurs when personal and/or credit information belonging to Consumer B appears in one or more of Consumer A's credit files.

16.     "Mixed files" create a false description and representation of a consumer's personal and/or credit history.

17.     Mixed files are not a new phenomenon. Defendant has been on notice of the existence of mixed files, and the fact that its procedures for creating credit and consumer files, including its matching algorithms, are prone to frequently cause mixed files, for over thirty (30) years. *See Thompson v. San Antonia Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

18.     FCRA lawsuits have resulted in multi-million-dollar verdicts for consumers who fall victim to a mixed consumer file.

19.     For example, in 2002, the jury in *Judy Thomas v. Trans Union LLC*, District of Oregon, Case NO. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas's personal and credit information with another consumer's and failing to unmix them despite Ms. Thomas' numerous disputes. The jury awarded Ms. Thomas $300,000.00 in actual damages and $5,000,000.00 in punitive damages. Despite the verdict, Defendant continues to mix consumers' consumers' files with other consumers' files.

20.     Furthermore, no less than three federal Courts of Appeal have held a consumer reporting agency violates 15 U.S.C. § 1681e(b) and may be found to have willfully violated the FCRA when it mixes a consumer's file with another consumer.

21.     Notably, the Federal Trade Commission has specifically warned consumer reporting agencies to review their procedures when a mixed file occurs.

5

22.     Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed files remain a significant problem for innocent consumers, including Plaintiff.

23.     Plaintiff's claims arise out of the Defendant's blatantly inaccurate reporting, wherein Defendant published in a consumer report about Plaintiff medical history information of another consumer because Defendant mixed Plaintiff's consumer file with that of an unrelated consumer.

24.     Accordingly, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b); for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and in fact, the product of a mixed file, and for failing to delete the disputed information from Plaintiff's credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

25.     As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from the Defendant for its willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., as described herein.

## PARTIES

26.     Brittany Nicole Smith f/k/a Brittany Nicole Jackson ("Plaintiff" or "Mrs. Smith") is a natural person residing in Gastonia, North Carolina, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

27.     Defendant Milliman, Inc. d/b/a/ Intelliscript ("Defendant" or "Milliman") is a corporation with a principal place of business located at 1301 5th Ave Ste 3800, Seattle, WA 98101-2635, and is authorized to do business in the State of North Carolina, including within this

6

District. Defendant Milliman can be served through its registered agent United Agent Group Inc. located at 15720 Brixham Hill Avenue #300, Charlotte, NC 28277.

28.     Milliman is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Milliman is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

## JURISDICTION AND VENUE

29.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

30.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## SUMMARY OF THE FAIR CREDIT REPORTING ACT

31.     The FCRA was enacted to ensure fair and accurate credit reporting by consumer reporting agencies, requiring them to adopt reasonable procedures that balance the needs of commerce for consumer credit, employment, insurance, and other information with the consumer's right to confidentiality, accuracy, relevancy, and proper utilization of such information. See 15 U.S.C. §§ 1681(a), 1681(b).

32.     Under the FCRA, consumer reporting agencies must (i) implement reasonable procedures to ensure the maximum possible accuracy of consumer reports (15 U.S.C. § 1681e(b)), and (ii) reinvestigate and correct any inaccuracies upon consumer disputes (15 U.S.C. § 1681i). Consumers have a private right of action against agencies that negligently or willfully violate these obligations.

## DEFENDANT'S MIXED FILE PROBLEM

33.     Defendant knows that different consumers have similar names.

34.     Defendant knows that different consumers can have similar Social Security numbers.

35.     Defendant knows that different consumers with similar names can also have similar Social Security numbers.

36.     Defendant knows that public records and medical records often do contain identifying information such as Social Security numbers or dates of birth.

37.     Defendant matches medical records and public records to a consumer's file by comparing the information about the consumer associated with the medical or public record to the information they maintain about the consumer in the consumer's file or files.

38.     Defendant accomplishes this matching of consumer information to consumer files through the use of certain matching algorithms or database rules.

39.     From time to time, Defendant's matching algorithms match information belonging to one consumer to the consumer file of another consumer; resulting in what's commonly known as in the credit reporting industry as a mixed or merged file.

40.     A mixed or merged file is the result of Defendant's inaccurately mixing personal identifying information and credit or other personal information and/or an entire credit file belonging to one consumer into the consumer file of another consumer.

41.     There are many different possible causes for the mixing of consumer files but all of them relate in one way or another to the algorithms and/or database rules used by Defendant to match personal identifying information and other personal information, including public record information or credit information, to a particular consumers' file.

8

42.     The success or failure of these algorithms or rules is both a function of the rules themselves and of the information provided by the furnishers of the tradeline or other information to Defendant.

43.     A mixed consumer report could be caused by an improper algorithm just as it could be caused by the inaccurate reporting of a consumer's personal "indicative" information (e.g., name, Social Security number, address, date of birth, etc.) by the furnishers to Defendant.

44.     Accordingly, the database rules determine which consumer files are selected by the algorithm and merged to create a complete consumer report.

45.     Therefore, a mixed consumer report is sometimes the result of the mixing of two or more consumer files belonging to different consumers into one consumer report.

## FACTUAL ALLEGATIONS

**Plaintiff Applies for Life Insurance with Gerber Life Insurance Company ("Gerber") June 2023**

46.     In or around June 2023, Plaintiff was interested in applying for life insurance. Plaintiff wanted life insurance to ensure her daughter's and husband's financial security.

47.     In or around June 2023, Plaintiff completed and submitted an application for life insurance with Gerber.

48.     For Gerber to make a determination on Plaintiff's insurance application, it would need to obtain copies of her consumer file(s).  Plaintiff provided Gerber with her personal identification information, including her Social Security number, and authorized it to obtain copies of her consumer file(s) containing her personal and medical history.

49.     On or about June 16, 2023, Gerber ordered a consumer report from Defendant.

//

9

**Gerber Denies Plaintiff's Application for Life Insurance**

50.     In or around June 2023, Gerber issued an adverse action notice to Plaintiff. Within that letter, Gerber communicated that it had denied Plaintiff's insurance application due to information reported by Defendant.

51.     Upon information and belief, Defendant sold a consumer report about Plaintiff to Gerber in response to her life insurance application, which consumer report contained inaccurate personal and medical history information. Specifically, the consumer report Defendant sold to Gerber in or around June 2023 contained inaccurate prescription drug history.

52.     Plaintiff was shocked and humiliated upon learning that adverse medical/prescription drug history that did not belong to her appeared on her consumer report in response to her insurance application.

**Plaintiff's Mixed Credit File as of July 2023**

53.     Shocked, worried, and confused, Plaintiff immediately requested a copy of her consumer report from Defendant.

54.     On or about July 11, 2023, Plaintiff secured a copy of her consumer report from Defendant.

55.     Upon reviewing the contents of the July 2023 consumer report, Plaintiff was confused by the appearance of several pieces of information that did not belong to Plaintiff at all.

56.     Specifically, Defendant was reporting information that did not belong to Plaintiff including but not limited to: prescribed drugs for depression, anxiety, painkillers, insulin, medication for hypertension and cholesterol; doctor's visits for mental health counseling, treatment for chronic back pain, physical therapy, diabetes management, and cardiovascular health concerns.

10

57.     Furthermore, Defendant was reporting medical history details such as healthcare providers' information, pharmacy addresses, and physician history information, from states that she has never lived in nor visited.

58.     Upon information and belief, Gerber denied Plaintiff's June 2023 life insurance application as a result of inaccurate prescription and medical history in the consumer report it received from Defendant, which it relied on in making its determination.

59.     By reporting the aforementioned prescription and medical history and other personal information in the credit file presumably about Plaintiff, despite the fact that the accounts and information do not belong to Plaintiff, Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained within Plaintiff's credit files and consumer reports, in violation of 15 U.S.C. § 1681e(b).

**Plaintiff Disputed the Misinformation with Defendant August 2023**

60.     In or around August 2023, worried that something was very wrong with her consumer file and medical records, Plaintiff disputed the inaccurate prescription and medical history with Defendant ("August 2023 Dispute").  Specifically, Plaintiff disputed the information that did not belong to her. Plaintiff disputed via email.

61.     Along with her dispute, Plaintiff provided a copy of the inaccurate consumer report and highlighted all of the information that did not belong to her.

62.     Plaintiff requested that Defendant reinvestigate the disputed information, correct the reporting, and send her a corrected copy of her credit report

63.     In or around August 2023, Defendant responded to Plaintiff's August 2023 Dispute and conceded its error by removing the disputed information. Upon information and belief, Defendant also issued a revised consumer report to Gerber.

11

64. Thereafter, Plaintiff's application for life insurance with Gerber was approved. The premium cost for the Gerber life insurance is $40 per month with an insurance coverage of only $50,000.

### Plaintiff Applied for Life Insurance with Southern Farm Bureau Life Insurance ("Southern") April 2024

65. In or around April 2024, Plaintiff, seeking a life insurance plan with higher insurance coverage, completed and submitted an application for life insurance with Southern.

66. In order for Southern to make a determination on Plaintiff's insurance application, it would need to obtain copies of her consumer report. Plaintiff provided Southern with her personal identification information, including her Social Security number, and authorized it to obtain copies of her consumer file(s) containing her personal and medical history.

67. Plaintiff was excited about obtaining life insurance with Southern because the premium cost was $20 a month, which was less than Gerber, and consisted of $250,000 in insurance coverage (five times more than her insurance with Gerber).

68. On or about April 24, 2024, Defendant sold a consumer report to Southern in response to Plaintiff's application for life insurance.

### Southern Denies Plaintiffs Application for Life Insurance

69. On or about April 28, 2024, Southern notified Plaintiff that her life insurance application was denied. Southern stated that Plaintiff was denied on the basis of, in whole or in part, the consumer report it received from Defendant.

70. Plaintiff was frustrated and devasted at the denial because she knew that she did not have any adverse medical history information that would preclude her from obtaining life insurance.

12

71.     Plaintiff reasonably suspected that Defendant was once again reporting inaccurate prescription and medical history information in response to her life insurance application.

**Plaintiff's Mixed File as of May 2024**

72.     In or around May 2024, Plaintiff secured a copy of her consumer report from Defendant.

73.     Upon reviewing the contents of the May 2024 consumer report, Plaintiff was frustrated by the appearance of several pieces of information that did not belong to Plaintiff at all.

74.     Defendant, equipped with the knowledge that such inaccurate information was previously removed, was reporting stigmatizing prescription drug history and other medical history information which belonged to a different consumer. Once again, Defendant's reporting was grossly inaccurate.

75.     The inaccurate information reported by Defendant was related to a consumer from Missouri. Plaintiff had never lived in Missouri, nor has she seen a doctor or been treated in Missouri.

76.     Plaintiff was dismayed at the inclusion of erroneous and stigmatizing information on Defendant's consumer report about her.

77.     Upon information and belief, Southern denied Plaintiff's April 2024 life insurance application as a result of inaccurate prescription and medical history in the consumer report it received from Defendant, which it relied on in making its determination.

78.     It was inaccurate for Defendant to publish information to a third party indicating that Plaintiff had medical records and personal information tied to another individual, including records of prescription history, residency and medical transactions in a state where Plaintiff had never lived or been treated.

13

79.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

### Plaintiff's December 2024 Dispute to Defendant

80.     In or around December 2024, feeling helpless and disappointed that she has to deal with Defendant's egregious reporting again, Plaintiff disputed the inaccurate prescription and medical history with Defendant ("December 2024 Dispute").  Specifically, Plaintiff disputed the information that did not belong to her. Plaintiff disputed via email.

81.     Along with her dispute, Plaintiff provided a list of all of the prescription drug history that does not belong to her which appeared in Defendant's consumer report.  Plaintiff identified herself and explained that the disputed information does not belong to her and was interfering with her ability to obtain life insurance. Plaintiff also provided her medical history for the Defendant's reference.

82.     Plaintiff requested that Defendant reinvestigate the disputed information, correct the reporting, and send her a corrected copy of her credit report.

### Defendant Failed to Conduct a Reasonable Reinvestigation December 2024

83.     On or about December 30, 2024, Defendant sent Plaintiff an email acknowledging receipt of Plaintiff's December 2024 Dispute.

84.     Thereafter, Defendant, in an email exchange with Plaintiff, advised her to reach out to her health insurance provider because her health insurance provider may have paid claims related to a different consumer under Plaintiff's name.

85.     However, although Defendant acknowledged that the error could have been due to Plaintiff's health insurance provider furnishing inaccurate information, as of the date hereof,

14

Defendant has not corrected and has not removed the disputed information from Plaintiff's consumer report/file.

86. Upon information and belief, Defendant failed to send a copy of Plaintiff's December 2024 Dispute to Plaintiff's health insurance provider and did not request that Plaintiff's health insurance provider to investigate.

87. Upon information and belief, Defendant failed to unmix Plaintiff's credit file from that of the other consumer and likely Defendant continued to report the other consumer's information to Plaintiff's credit file.

88. Upon information and belief, Defendant continues to mix Plaintiff consumer file with prescription drug history and medical history information belonging to a different consumer.

89. Defendant failed to conduct a reasonable investigation of Plaintiff's December 2024 Dispute, or any reinvestigation whatsoever, to determine whether the disputed information was inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

90. At all times pertinent hereto, Defendant was acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

91. At all times pertinent hereto, Defendant's conduct, as well as that of its respective agents, servants, and/or employees, was intentional, willful, and/or reckless. Alternatively, Defendant's conduct as well as that of its respective agents, servants, and/or employees was negligent.

**Plaintiff Damages**

92. As a result of the "mixed file," Defendant made it extremely difficult for Plaintiff to obtain the life insurance she needed.

15

93. Due to Defendant's egregious reporting, Plaintiff was unable to obtain the life insurance needed to ensure her family's financial security.

94. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, loss of ability to obtain life insurance coverage; loss of ability to benefit from Plaintiff's true risk profile; financial harm from increased premiums as a result of inaccuracies in Defendant consumer reports; the expenditure of time and money disputing and trying to correct Defendant's inaccurate consumer file and reports concerning Plaintiff; the expenditure of labor and effort disputing and trying to correct Defendant's inaccurate consumer file and reports concerning Plaintiff; and emotional distress including, but not limited to, the mental and emotional pain, anguish, humiliation, and embarrassment caused by having another consumer's personally identifying information and insurance policies and claims, mixed into Plaintiff's consumer file.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (First Claim for Relief Against Defendant)

95. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

96. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

16

97. On multiple occasions, Defendant prepared patently false consumer reports concerning Plaintiff.

98. Defendant mixed another consumer's personal and medical history information into Plaintiff's credit file, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

99. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

100. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, loss of ability to obtain life insurance coverage; loss of ability to benefit from Plaintiff's true risk profile; financial harm from increased premiums as a result of inaccuracies in Defendant consumer reports; the expenditure of time and money disputing and trying to correct Defendant's inaccurate consumer file and reports concerning Plaintiff; the expenditure of labor and effort disputing and trying to correct Defendant's inaccurate consumer file and reports concerning Plaintiff; and emotional distress including, but not limited to, the mental and emotional pain, anguish, humiliation, and embarrassment caused by having another consumer's personally identifying information and insurance policies and claims, mixed into Plaintiff's consumer file.

101. Defendant's conduct, actions, and inactions was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

17

102.     Plaintiff is entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim for Relief Against Defendant Experian)**

103.     Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

104.     The FCRA mandates that Defendant conduct a reasonable reinvestigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The FCRA imposes a 30-day time limit for the completion of such an investigation. *Id*.

105.     The FCRA provides that if Defendant conducts its reinvestigation of disputed information and confirms that the information is, in fact, inaccurate or it is unable to otherwise verify the accuracy of the disputed information, it is required to delete the item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

106.     Plaintiff initiated at least one dispute with Defendant and disputed inaccurate information reporting in her consumer file and requested that Defendant correct and/or delete the inaccurate, misleading, and highly damaging information belonging to an unrelated consumer.

107.     Defendant conducted *no* investigation of Plaintiff's December 2024 Dispute, or such investigation, if any, was so unreasonable as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

108.     Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the

18

30-day period beginning on the date on which it received notice of Plaintiff's dispute; and by failing to maintain reasonable procedures with which to filter and verify information in Plaintiff's credit files.

109.    As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, loss of ability to obtain life insurance coverage; loss of ability to benefit from Plaintiff's true risk profile; financial harm from increased premiums as a result of inaccuracies in Defendant consumer reports; the expenditure of time and money disputing and trying to correct Defendant's inaccurate consumer file and reports concerning Plaintiff; the expenditure of labor and effort disputing and trying to correct Defendant's inaccurate consumer file and reports concerning Plaintiff; and emotional distress including, but not limited to, the mental and emotional pain, anguish, humiliation, and embarrassment caused by having another consumer's personally identifying information and insurance policies and claims, mixed into Plaintiff's consumer file.

110.    Defendant's conduct, actions, and inactions was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

111.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendant negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.     Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.     Granting further relief, in law or equity, as this Court may deem appropriate and just.

**DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.


RESPECTFULLY SUBMITTED THIS: February 4, 2025

> /s/ Carlos Randolph Emory
> Carlos Randolph Emory, Bar No. 17161
> The Emory Law Firm, P.C.
> 11020 David Taylor Drive, Suite 102
> Charlotte, NC 28262
> Phone: 704-371-4333
> Text Phone: 704-877-0749
> Fax: 704-371-3015
> E-mail: emorylawecf@gmail.com
>
> David Pinkhasov, NY # 5925904
> (*Pro Hac Vice Forthcoming*)
> CONSUMER ATTORNEYS
> 68-29 Main Street
> Flushing NY 11367
> T: (718) 701-4605
> F: (718) 715-1750
> E: dpinkhasov@consumerattorneys.com
>
> *Attorneys for Plaintiff*
> *Brittany Nicole Smith*

20
